*618 OPINION of the Court, by
Ch. J. Boyle.-
The appellants were defendants in the court below and have the elder patent for the land in controversy, upon which ^ey exclusively rely. It will therefore only be necessary to investigate the validity of the right of the ap- *619 petlees, who were the complainants in that court. They derive their claim as purchasers, under Samuel Henderson’s settlement and pre-emption.
location of 400 acres (i lying on the trace from Boones borough to the lower Salt Springs on Licking, called the Sycamore Forest, running down the creek lor quantity,”
Two creeks approaching the Forest, the one intended deter, mined by the' call for the trace.
The furvey of the 400 a. eres directed
Location of 1000 acres, joining the a-bovc “ all round, and to run do-urn the creek for quanti- • >y,” “ to join all around” is indefinite and ought not ta yield to the cal! ** down the-creck for quan-tky.”
The furvey directed,
The commissioners’ certs (irate, and the entries with the surveyor of the certificate and the pre-emption Warrant, are in the following words : “ December 33d 1779, Samuel Henderson tins day claimed a settlement and pre-emption to a tract of land, in the district oí Kentucky, lying on the trace from Bouneshorough to the lower Salt Springs on Lick.ng, called the Sycamore Forest, running down (to) the creek for quantity, by settling and residing in the countrj one \ ear before the vear 1778, and marking said land in May 1776 ; satisfactory proof being made to the court, they are of opinion that the said Henderson has a right to a settlement of 400 acres of land including the above location, and the pre-emption of 1000 acres adjoining.’'
“ February 3d 1 7SO, Samuel Henderson enters 400 acres of land in Kentui ky, by virtue of a certifícate, Sic. Iving on the trace from Boonesoorough to the lower Salt Spring oil Licking, called the Sycamore Forest, and running down the creek for quantity.”
“ June 23d 1/80, Samuel Henderson enters 1000 acres on a,pre-emption warrant, lying on the trace from Boouesborough to the lower Salt Springs on Licking, joining his settlement at the Sycamore Forest all round, and to ran down the creek for quantity. : ■" -
The trace from Bounesborough to the lower Salt Springs on Licking, and cite Sycamore Foiest, are abundantly established, both with respect to their identity and notoriety.
The trace leads through the Sycamore Forest, and on the side of the trace near the cen’re of the F’orest Samuel Henderson (as is proven in the cause) in the spring of the year 1776, marked a tree, which was until after the date of the above entries known by the name of his improvement.
From a delineation of the boundaries of the. Forest upon the connected plat returned in the cause, it appears that a survey of 400 acres in a rectangular figure, will include the extremes of the Forest, and extend some further on one or more sides to obtain the quandr
*620 Hear to the Forest, on the south side, runs a stream known by the name of Hancock’s fork : and on the north about the same distance from the Forest, is a stream called Johnson’s fork. The latter, opposite to the northern extreme of the Forest, turns its course and runs thence nearly in a direction with the trace from Boonesborough to the Salt Springs, as far as it is delineated, and with which it is intersected at a small distance from the Forest. The former is crossed by the trace on the side of the Forest next Boonesborough, with which in its course downwards it forms an angle of about forty-five degrees, in the direction to the Salt Springs* Both of these streams empty into Strode’# creek, which lies to the east of the Forest, at more than treble the distance of either of the others, and runs in a course from south to north, nearly in a parallel with the course of the trace from Boonesborough to the lower Salt Springs.
The relative effect of these several objects in giving location to the settlement, is the first difficulty which the case presents, and which can only be solved by a correct construction of the commissioners’ certificate, and the entry thereof with the surveyor.
Whether we consider the latter separately, or jointly with the former, is in truth not material j lor the location in both is essentially the same. The only object alluded to in the certificate which is omitted in the entry withf the surveyor, is, the marked tree or improvement. But it is plain from the previous description of the land intended to be appropriated, as well as front the manner in which the allusion to this object is coupled with the claimant’s residence in the country, that it was not intended to have a locative effect, but that it was referred to as an additional reason for granting the particular tract before described in the certificate. The marking or improvement was originally made no doubt with a design of indicating the ownership ; and in ma-ssy certificates for village rights, (as this is) for the wan| of other description there is a necessity of giving to the improvement or marking, though mentioned in a phraseology similar to that used in this instance, a locative effect; but that necessity does not exist in a case like the present, where the land is otherwise sufficientlf described.
*621 That there is a sufficient description of the land intended to be appropriated by the settlement, without giving a locative effect to the marking or improvement in this case, will be evident by attending to the previous calls, which are common to the certificate and entry with the surveyor. These calls are for “ 4*0® acres, ly~ - ing on the trace from Boonesborough to the lower salt springs, called the Sycamore Forest, and to run down the creek for quantity
The first part of: this description, namely, “400 acres, lying on the trace,” &c. is vague and indefinite ; but when to this is added the expression “ called the Sycamore Forest,” that being a known and definite object, the description of the land intended to b« appropriated, to the extent of the Forest, becomes precise: and certain. But as the 400 acres will extend beyond the extremes of the Forest, it is a matter of some doubt on what side it should he extended, to comply with the remaining call oi the entry, “to run down the creek for quantity.” This doubt is produced by the two stream* lying on opposite sides of the Forest. Were there no circumstance which indicated the intention of the locator to prefer either of these streams to the other, the entry would: be so far vague. We think, however, that the calilo run down the creek for quantity, when connected with the previous call to lie on the trace, shews the intention of the locator to prefer Johnson’s Fork, which lies on the side of the forest next the lower salt springs, and runs nearly in a direction with the trace from Boonesborough to the salt springs. Extended on that side, therefore, the land would, while it run down the stream, at the same time comply with the other call to lie on the trace. But if extended on the opposite side, on the trace, it would run up rather than down Hancock’s Fork ; and if extended down that stream, it would be so far running from the trace, the course of the stream and that of the trace forming an angle of about forty-five degrees.
We have thus far attended to the calls of the settlement, as the pre-emption entry is made to depend upon it, but in no other point of view is the position of the settlement material ; for the interference is not with the settlement, but the pre-emption, and with that part which lies south of the settlement, being on the side ©¿ *622 the forest opposite to Johnson’s fork, and at the dis* tance of 40 or 50 poles from the forest.
The calls of the pre-emption entry are, “lying on the trace, &c. adjoining his settlement all around, and to run down the creek for quantity.” The call to lie on the trace, requires no comment ; the real difficulty is in giving a proper effect to the other two calls. The call to run down the creek for quantity,” is an express call ; and when the point from which the extension down the'creek is to commence, is fixed, the call is certain and definite. The call for adjoining the settlement ail around, is also express, but is indefinite, and it is only by construction that a precise and certain effect can be given to it. Literally, it would be a compliance with this call to extend either line of the survey the smallest distance from the settlement, without regard to the inequality between the distance of such line and the other lines of the survey from the settlement lines. But to give a certain effect to such a call, it has been construed, when uncontroled bv any other call more special and precise, to require the lines of the survey to be equidistant from the lines of the settlement which it calls to adjoin. Such a construction in this case would destroy all effect of the call to run down the creek for quantity, and would be equivalent to a rejection of it. To destroy' or reject this latter call, which is express in its nature and definite as to its extent, for the sake of giving a constructive effect to the other call, would be contrary to the clearest principles of the land law, and to the uniform tenor of the adjudications upon similar points.(a) lo all cases, a call, the operation of which is produced -by construction, must yield to one whose effect is certain and definite without the aid of construction. It follows, therefore, that the call “ to run down the creek for quantity,” should in this instance have its effect, and. control the call “to adjoin the settlement all around.” Of the two streams on opposite sides of the forest, we are of opinion that Johnson’s fork, on the northern side, ought to be preferred-, as best corresponding with the intention of the locator, for the same reasons which are mentioned with regard to a similar call-in the settlement entry. Consequently the survey of the pre-emption should barely include the opposite or -southern boundary-of the settlement, and-extend- north* *623 Vvai'dlv down Johnson’s fork for quantity. A survey thus made would include no part of the land now in controversy ; and the decree of the inferior court, in support of the complainant’s claim to it, is therefore erroneous.
Decree reversed with costs, and cause remanded, that the bill may be dismissed with costs.

 Vol. 1 Black vs. Botts, p. 95-Calk & al. v. Stribling, 122.